FORNETTE and another vs. CARMICHAEL.

*(1, 2) Contract construed. (3, 4) Evidence.*

1. A contract for the sale of logs, after providing for earlier payments, fixes a date for payment of the balance, "to be ascertained by the scale of logs," at a certain rate per thousand feet. The logs are described as all those in a certain county having a certain mark, "be the same 900,000 feet, more or less." They had already been scaled on the bank at 905,-500 feet; and it does not appear that there was any other scaling; but defendant objected to evidence of such bank scaling, on the ground that the contract contemplated a scaling thereafter to be made, in the boom. *Held,* that the ambiguity of the contract in respect to the time of scaling is *latent,* and might be explained by evidence *aliunde;* and it was not error to admit evidence of the bank scaling.

2. Defendant having taken no steps to have another scaling of the logs, after the purchase, and offered no evidence that the contract contemplated such second scaling, the trial court did not err in holding it to refer to the bank scaling.

3. The scale by which defendant purchased having been made under the direction of the proper lumber inspector, and the result duly entered in the scale book, there was no error in refusing to receive in evidence, to impeach it, mere estimates of witnesses as to the number and size of the logs, made without count or measurement.

4. The party who has a written instrument in his possession, cannot give parol evidence of its contents.

APPEAL from the Circuit Court for *Chippewa* County.

Action to recover an unpaid balance of the price of certain pine saw-logs sold by the plaintiffs to the defendant. The contract of sale, which is in writing and was duly executed by the parties, is as follows: "Know all men by these presents, that Hercules Gayner and *Flavian Fornette*, of Chippewa Falls, Wisconsin, of the first part, for and in consideration of eleven hundred and seventy-six dollars and forty-eight cents, lawful money of the United States, to us in hand paid at and before the sealing and delivery of these presents by *Thomas Carmichael*, and the further sum of five hundred dollars to be paid April 1, 1873, the balance on the 29th day of July, 1873, to be ascertained by the scale of logs, at the rate of $4.55 per thousand, by the party of the second part, the receipt whereof is hereby acknowledged, have bargained, sold, granted and conveyed, and by these presents do bargain, sell, grant and convey, unto the said party of the second part, his heirs, executors, administrators and assigns, the property described in the annexed schedule, to have and to hold the same unto the said party of the second part, his executors, administrators and assigns forever; and we do for ourselves, our heirs, executors and administrators, covenant and agree to and with the said party of the second part to warrant and defend the goods hereby sold unto the said party of the second part, his executors, administrators and assigns, against all and every person or persons whomsoever.

"In witness whereof we have hereunto set our hands and seal this 23d day of November, 1872.

"SCHEDULE.

"All pine saw-logs in the county of Chippewa and state of Wisconsin, of the following mark, to wit, thus: *F. F. H.*, be the same 900,000 feet, more or less."

The defendant, in his answer, admits that he received 700,000 feet of logs under the contract, but denies that he received a greater quantity.

Previously to the execution of the contract, the logs had been scaled on the bank. The scale book was not produced on the trial, but the evidence showed that it was in the hands of the defendant, and that there were 905,500 feet of the logs according to such scale. Parol evidence was offered by the defendant for the purpose of showing by estimate that there was a less quantity of the logs, and that the scale book showed a less quantity than that above mentioned; but it was rejected by the court.

It does not appear that there was any other scaling of the logs. There was no dispute as to the amount of payments, and the court directed a verdict for the plaintiff for the unpaid balance, on the basis of 905,500 feet. The defendant appealed from a judgment entered upon the verdict.

The cause was submitted for the appellant on the brief of *Arthur Gough*, and for the respondents on the brief of *Bingham & Pierce*.

For the appellant it was argued, in substance, that as the logs were purchased at a certain rate per thousand feet, the total amount to be ascertained by scale, it is obvious that the reference was not to a scaling already made and the result of which was well known, but to a scale to be made subsequently to the purchase; and that it was error, therefore, to hold the purchasers absolutely bound by the amount ascertained by the former scaling, and reject evidence offered by them to show that they had not received any such amount. The logs were cut between November 22, 1871, and March 1, 1872, and were then scaled; and, after lying in Fisher river until November following, subject to the spring and summer floods, it could not be assumed that they remained undiminished in quantity at the time of the purchase. Defendant should therefore have been permitted to show, by any means in his power, that he received in fact only the amount alleged in his answer. The evidence which he offered was the best that he could obtain under the circumstances; its value was for the jury to deter-

mine; and if it had any tendency to prove the averments of the answer, its rejection was error. *Fouke v. Ray*, 1 Wis., 104; *Washington Union Ins. Co. v. Wilson*, 7 id., 169; *McDowell v. Laev*, 35 id., 171, 176; *Barstow Stove Co. v. Bonnell*, 36 id., 66; *Clark v. Lake*, 1 Scam., 229; *Prather v. Vineyard*, 4 Gilm., 40. The opinion of an expert in an art or trade is admissible in evidence; and every employment to the pursuit of which a particular class is devoted, is an art or trade, under the rule. *R. & S. R. R. Co. v. Budlong*, 10 How. Pr., 289; 12 N. Y. Leg. Obs., 46. "A witness may speak of the value of property and labor, when it appears that he has peculiar sources of knowledge to guide him on the subject." *Lamoure v. Caryl*, 4 Denio, 370.

For the respondents it was contended, that the logs were sold at the bank scale, that is, what they scaled on the bank, and before they were driven in the spring and had become scattered along the river. In buying at boom scale, a much larger price is paid than in buying at bank scale, a portion of the logs being always lost before they are received in the booms. The price paid for these logs is the lowest paid for even bank scale. When the logs were sold, neither party had the scale; it was with the scaler or lumber inspector, where it belonged, and, by the terms of the agreement, was to be referred to to ascertain the amount. The fact that defendant had taken no steps to have the logs scaled before this action was commenced, shows conclusively that he depended upon the scale already made. The schedule annexed to the bill of sale also shows that the amount was understood between them at about 900,000 feet.

Lyon, J. The defendant objected on the trial to the admission of evidence of the bank scaling of the logs, on the ground that the contract contemplates a scaling to be made at the boom after the same was entered into, and not the bank scaling.

The contract, standing alone, seems to be ambiguous upon the question whether the quantity of the logs was to be ascertained by the bank scaling or a boom scaling; but it is a latent ambiguity, which may be explained by testimony *aliunde* the writing itself. Hence, the court could not properly hold, as matter of law, that the contract referred to a boom scaling, and it was not error to admit evidence of the bank scaling.

When it is considered that the defendant purchased the logs by a scale; that the quantity so purchased was estimated at nearly the quantity shown by the bank scaling; that the defendant took no steps to have another scaling of the logs after the purchase; and that he offered no evidence tending to show that the contract contemplated any other scaling — the mind is impelled to the conclusion that the plaintiffs intended to sell, and the defendant to purchase, by the bank scaling. The circuit court so held, and we think correctly.

The testimony offered by the defendant of estimates of the quantity of logs put upon the bank, or into the stream, by the plaintiffs, was properly rejected. The defendant purchased by the scale, and such scale was made under the directions of the proper lumber inspector, who examined and approved the work of the scaler when in progress, and the result was duly entered in the scale book. It would be most dangerous to permit the scaling to be impeached by the mere estimates of witnesses of the number and quantity of the logs, without either count or measurement. Had the testimony been received, and were the estimates less than the quantity shown by the scale book, we should still be of the opinion that the latter is the better, and indeed, under the circumstances of this case, the controlling evidence of the quantity of logs.

The testimony offered to prove that the scale book showed a less quantity of logs scaled than was testified to by plaintiffs' witnesses, was also properly rejected, for the very satisfactory reason that the defendant had in his possession the scale book, which was the best evidence of the fact. It would be a

palpable violation of an elementary rule of evidence, to permit a party to give parol evidence of the contents of a written instrument when the instrument itself is in his own possession.

These views dispose of the alleged errors adversely to the defendant, and result in the affirmance of the judgment of the circuit court.

*By the Court.*—Judgment affirmed.