[Crim. No. 4097. Fifth Dist. Feb. 24, 1981]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES R. MADDEN et al., Defendants and Appellants.

---

**COUNSEL**

Alan M. Caplan and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, and Tom Lundy, Deputy State Public Defender, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Nancy Sweet and Charles J. James, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**HOPPER, Acting P. J.—** Where evidence is introduced as to several criminal acts of oral copulation, all of which occurred within a relatively short time span but an accused is not charged with a violation of all of those acts, does the trial court commit reversible error in not giving a *sua sponte* instruction stating that the jurors must all agree that the accused committed the same act or acts? *Yes.* That issue (along with other contentions) arises out of an appeal by appellants James R. Madden and Jerry Vernacchio (hereinafter respectively Madden and Vernacchio) from conviction after jury trial of certain unlawful sexual acts (Madden of two counts of forcible sodomy and two counts of forcible oral copulation, and Vernacchio of one count of forcible oral copulation).

The sordid factual details need not be set forth in full. As to Vernacchio there was evidence, if believed by the jury, of a minimum of two acts of forcible oral copulation in the Stanislaus County jail. Only one

act was charged. As to Madden there was evidence, if believed by the jury, of two acts of forcible sodomy (both charged) and a minimum of three acts of forcible oral copulation with only two of such acts being charged. At no time, as to either Madden or Vernacchio, did the prosecutor make an election with respect to which act or acts of oral copulation defendants were charged. Similarly the jury was not instructed in the language of CALJIC No. 17.01[1] or similar language that the jury had to agree upon the particular act or acts.

Vernacchio[2] contends the trial court should have, *sua sponte*, instructed the jury that a finding of guilt requires the jury to all agree that the particular accused committed the same act or acts (see, e.g., CALJIC No. 4.71.5).[3]

*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913], notes that in criminal cases a trial court must instruct, even in the absence of a request, on those general principles of law which are closely and openly connected with the facts before the court and which are necessary for the jury's understanding of the case.

Just as juries must be instructed on lesser included offenses and defenses such as diminished capacity, the jury must be instructed on certain principles of law which control how they approach their task. For example, juries must be told the People have the burden of proving a defendant guilty and that the evidence must convince them of the defendant's guilt beyond a reasonable doubt. (Cf. *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]; Pen. Code, § 1096a.) Similarly, juries must be informed that their verdict must be unanimous. (See Cal. Const., art. I, § 16; *People* v. *Wheeler* (1978) 22

---

[1]CALJIC No. 17.01 provides in pertinent part: "He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

[2]Madden did not raise the issue in his brief and did not appear at oral argument. However, in the interest of justice, we consider the matter as to both appellants. Respondent does not dispute our authority to so do. Subsequent to oral argument Madden has, by letter, stated he wishes to join with his codefendant on this point.

[3]CALJIC No. 4.71.5 provides in relevant part: "And, in order to find the defendant guilty, you must unanimously agree upon the commission of the same specific act [or acts] constituting said crime within the period alleged.

"It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

Cal.3d 258, 265 [148 Cal.Rptr. 890, 583 P.2d 748].) The instruction omitted in this case also deals with how a jury must approach its task.

The principle that the entire jury must agree on the act or acts a defendant is convicted of is not new or undeveloped. (Compare *People v. Flannel* (1979) 25 Cal.3d 668, 680-683 [160 Cal.Rptr. 84, 603 P.2d 1].) Decisional law in California has held for many years that such an instruction is required. The rule was first announced in *People v. Castro* (1901) 133 Cal. 11, 13 [65 P. 13] (several acts of rape over a course of several months) and has been applied in many cases thereafter (*People v. Williams* (1901) 133 Cal.165, 168-169 [65 P. 323] (multiple acts of rape over a four-month period); *People v. McNeill* (1980) 112 Cal. App.3d 330, 335-336 [169 Cal.Rptr. 313] (assault on different victims); *People v. Alva* (1979) 90 Cal.App.3d 418, 424-426 [153 Cal.Rptr. 644] (multiple unlawful sex acts over five-month period); *People v. Gavin* (1971) 21 Cal.App.3d 408, 418-420 [98 Cal.Rptr. 518] (possession of narcotics); *People v. Dutra* (1946) 75 Cal.App.2d 311, 321-322 [171 P.2d 41] (contributing to the delinquency of a minor where there are several acts of sex perversion); *People v. Martinez* (1922) 57 Cal.App. 771, 774 [208 P. 170] (several acts of rape; no prejudice because no contradictory evidence as to the acts); *People v. Ruiz* (1920) 48 Cal. App. 693, 694-696 [192 P. 327] (several acts within an hour of assault with intent to commit rape); *People v. Elgar* (1918) 36 Cal.App. 114 [171 P. 697] (two acts of rape); *People v. Hatch* (1910) 13 Cal.App. 521, 534-536 [109 P. 1097] (several acts of embezzlement); *People v. Moreno* (1973) 32 Cal.App.3d Supp. 1, 8-9 [108 Cal.Rptr. 338] (two acts of resisting arrest approximately one-half hour apart); *People v. Thompson* (1956) 144 Cal.App.2d Supp. 854, 859 [301 P.2d 313] (jury must agree the defendant unlawfully used narcotics *or* was addicted to narcotics); *People v. McMillan* (1941) 45 Cal.App.2d Supp. 821, 829-830 [114 P.2d 440] (multiple batteries); see also *People v. Scofield* (1928) 203 Cal. 703, 709-710 [265 P. 914] (hit and run statute with separate parts—jury must all agree on which part was violated)).[4]

---

[4]The *Castro* rule is inapplicable where (unlike the situation in the instant case) only the offense charged is proved (*People v. Ruiz* (1957) 155 Cal.App.2d 59, 61-62 [317 P.2d 80] (possession of narcotics); *People v. Valencia* (1927) 85 Cal.App. 306, 309-310 [259 P. 361] (rape); *People v. Britt* (1923) 62 Cal.App. 674, 681 [217 P. 767] (incest and rape)) or where CALJIC No. 17.01 or a similar instruction in fact is given (*People v. Crume* (1976) 61 Cal.App.3d 803, 809, fn. 4 [132 Cal.Rptr. 577] (sex acts); *People v. Foster* (1931) 117 Cal.App. 439, 441, 443-444 [4 P.2d 173]; *People v. LaMantain* (1949) 89 Cal.App.2d 699, 701 [201 P.2d 598]) or where the record does not show what instructions were given (*People v. Anderson* (1962) 199 Cal.App.2d 510, 521-522 [18 Cal.Rptr. 793] (court cannot assume erroneous instruction was given or that a nec-

Unfortunately, cases subsequent to *Castro* have resulted in a farrago. Some have treated the problem as simply a matter of election by the prosecutor and may or may not then proceed to discuss the jury instruction. If there is no election and an election was required, the law presumes that an election has been made to stand upon the first act on which substantial evidence is introduced. (*People* v. *Castro, supra*, 133 Cal. 11, 13; *People* v. *Williams, supra*, 133 Cal. 165, 169; see also *People* v. *Muniz* (1970) 4 Cal.App.3d 562, 568, fn. 3 [84 Cal.Rptr. 501]; *People* v. *Byrnes* (1948) 84 Cal.App.2d 64, 70-71 [190 P.2d 286]; *People* v. *Meraviglia* (1925) 73 Cal.App. 402, 408-409 [238 P. 794]; *People* v. *Martinez, supra*, 57 Cal.App. 771, 774-775; *People* v. *Harlan* (1916) 29 Cal.App. 600, 602 [156 P. 980].) However, even where an election has been made or is deemed to have been made, the jury must be informed which act or acts are being prosecuted. (*People* v. *Castro, supra*, 133 Cal. 11, 13; *People* v. *Williams, supra*, 133 Cal. 165, 169; see also *People* v. *Ruiz, supra*, 48 Cal.App. 693, 695; *People* v. *Crume, supra*, 61 Cal.App.3d 803, 809, fn. 4 [132 Cal.Rptr. 577]; *People* v. *La-Mantain, supra*, 89 Cal.App.2d 699, 701 [201 P.2d 598].)

■ Some cases state there was only one offense (and thereby resolve the issue) based on a time factor. In some of the cases it is not clear what instruction, if any, was given to the jury. Cases tend to overlap in the discussion of the issues. Cases which conclude that multiple sex offenses, assaults or similar offenses are continuous in nature or are part of a continuous course of conduct are either situations where only the election issue is discussed (and not the instruction issue) or are simply wrong (perhaps resulting from the natural revulsion to some of the brutal attacks involved). (See, e.g., *People* v. *Mota* (1981) 115 Cal.App.3d 227 [171 Cal.Rptr. 212] (multiple rape of a single victim within approximately one hour held to be one continuous act—nothing is said in the opinion in regard to what instruction, if any, was given); *People* v. *Jefferson* (1954) 123 Cal.App.2d 219 [266 P.2d 564] (assault at two different times with two different knives said to be one offense, no indication as to what instruction, if any, was given); *People* v. *Fontana* (1934) 138 Cal.App. 379 [32 P.2d 160] (rape of a single victim once by several accused); *People* v. *Enright* (1934) 140 Cal.App. 649 [35 P.2d 1033] (multiple rape without indication as to what instruction, if any, was given).

essary instruction was omitted)) or where it has been pointed out to the jury in some way other than an instruction which charge is being relied upon (*People* v. *Miller* (1922) 56 Cal.App. 472, 478 [206 P. 89] (district attorney clearly indicated in opening statement the act upon which conviction was sought)).

Conceptually, the exception of continuous conduct resulting in but one offense is quite limited. There is a fundamental difference between a continuous crime spree and continuous conduct resulting in one specific offense. The continuous conduct exception only really applies, if at all, to those types of offenses where the statute defining the crime may be interpreted as applying, on occasion, to an offense which may be continuous in nature such as failure to provide, child abuse, contributing to the delinquency of a minor, driving under the influence and the like (see *People* v. *White* (1979) 89 Cal.App.3d 143, 151 [152 Cal. Rptr. 312] (pandering); *People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299] (child abuse); *People* v. *Heideman* (1976) 58 Cal.App.3d 321, 333 [130 Cal.Rptr. 349] (possession of a destructive device); *People* v. *Feldman* (1959) 171 Cal.App.2d 15, 25 [339 P.2d 888] (concealing stolen property); *People* v. *Lowell* (1946) 77 Cal. App.2d 341, 347-348 [175 P.2d 846], and *People* v. *Schoonderwood* (1945) 72 Cal.App.2d 125, 127 [164 P.2d 69] (contributing to the delinquency of a minor, but see *People* v. *Dutra, supra*, 75 Cal.App.2d 311, 321-322); *People* v. *Knight* (1939) 35 Cal.App.2d 472, 474 [96 P.2d 173] (driving under the influence); *People* v. *Jarvis* (1933) 135 Cal.App. 288, 309-310 [27 P.2d 77] (unlicensed fruit dealer); *People* v. *Morrison* (1921) 54 Cal.App. 469, 471 [202 P. 348] (failure to provide for minor child); *People* v. *Simon* (1913) 21 Cal.App. 88, 90-91 [131 P. 102] (multiple acts to cause an abortion)). Insofar as cases cited herein might be read as holding that multiple sex offenses constitute a continuous course of conduct or a single act, we disagree.[5] Multiple sex acts cannot be held to be continuous conduct on a theory of there being but one act of sexual abuse. In *People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63], the defendant committed numerous sexual offenses upon a single victim during an uninterrupted period of some 45-60 minutes. Our Supreme Court held that the defendant could be convicted and punished for each separate act/offense. (*Id.*, at pp. 552-554; see also *People* v. *Clem* (1980) 104 Cal.App.3d 337, 346-347 [163 Cal.Rptr. 553].) So also in the instant case. ▮ Each appellant here could have been (and Madden in fact was) charged with several sexual offenses. The problem is that insofar as the charges of oral copulation are concerned, the jury was not told all of the jurors had to agree on a specific act.

---

[5]At oral argument respondent argued that there was evidence of only one act of oral copulation by Vernacchio. Our reading of the record leads us to conclude that arguably there were as many as four such acts by Vernacchio (three on Aug. 9 and one on Aug. 10, 1978) as a principal or as an aider and abetter.

The failure to instruct *sua sponte* on the necessity of agreement of the jurors was error and such error requires reversal with respect to the charges of oral copulation.

The acts here are despicable. There is substantial evidence to sustain each act of forcible oral copulation. However, determination of guilt is for a jury, not this court. No one can say from this record that the jurors did all agree on a particular offense insofar as the oral copulation charges are concerned. At any retrial on the oral copulation charges the jury should be properly instructed that all 12 have to all agree.[6] As stated in the well-reasoned opinion of Presiding Justice Puglia writing for the Third District in *People v. McNeill, supra,* 112 Cal.App.3d 330, 335-336, "It is fundamental that a criminal conviction requires a unanimous jury verdict (Cal. Const., art. I, §§ 16, 7, subd. (a); *People v. Wheeler* (1978) 22 Cal.3d 258, 265 [148 Cal.Rptr. 890, 583 P.2d 748]). Where defendant is charged in a single count with several offenses and the evidence tends to show that he committed more than one such offense, the jury must agree upon the particular act committed in order to convict. (See *People v. Scofield* (1928) 203 Cal. 703, 710 [265 P. 914].) The possibility that the jurors may have come to different conclusions as to the identity of the assault victim vitiates the constitutionally required assurance of juror unanimity as to the assault conviction. While it is of course possible that the jurors agreed unanimously as to a particular victim of the assault, such agreement would necessarily be fortuitous in the absence of a proper instruction. More to the point, on the record before us we have no way to 'gauge the precise effect' (*People v. Gainer* (1977) 19 Cal.3d 835, 854 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73]) of the instructional lacuna upon the verdict actually rendered. Since we cannot say that the jurors agreed unanimously upon the act constituting the offense charged..., we have no assurance that a miscarriage of justice did not occur. Therefore, the judgment of conviction under the assault count must be reversed. (See *People v. Gainer, supra,* at p. 855.)"

---

[6]The principle discussed herein was openly and closely connected with the facts. The prosecutor argued that even if the jury believed Vernacchio's testimony, it could find him guilty on an aiding and abetting theory. There was also direct evidence presented by one inmate that Vernacchio personally committed the act twice. Some of the jurors might have believed Vernacchio aided and abetted Madden, but did not participate personally. Others may have believed the opposite. We have no way of knowing if the jury was unanimous. Without being told they must all agree on the same act the jury could have concluded it was permissible for some to vote for conviction because Vernacchio aided and abetted one act while others could have voted for conviction based on a belief Vernacchio personally participated in a different act. That distinct possibility, *Castro* and *Williams* noted in 1901, must be prevented.

Because the other alleged instructional errors raised by Vernacchio can easily be avoided upon retrial, discussion of those contentions is unnecessary.

We now turn to Madden's contentions as applied to the two sodomy convictions.

First, Madden contends that the district attorney failed to present exculpatory evidence to the grand jury. Madden asserts that the prosecutor failed to present evidence of a report of a medical examination of the victim of the sodomy which would have shown "no evidence of trauma and no blood on a digital examination." Madden's argument is that if the brutal acts of sodomy took place as the victim said, it is probable the medical report would have indicated trauma. This is the same argument raised in the companion case of *People* v. *Laney* (1981) 115 Cal.App.3d 508 [171 Cal.Rptr. 493], and is rejected as being without merit for the reasons set forth therein.

Second, Madden argues that in spite of the holding in *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916], his request for a postindictment preliminary hearing should have been granted. The contention is without merit. *Hawkins* explicitly limits the application of its holding to cases in which a defendant had not entered a plea at the time the opinion in *Hawkins* became final. (*Id.*, at p. 594.) Madden entered his plea before the *Hawkins* opinion.

Third, Madden contends the trial court should have instructed *sua sponte* on the defense of threats and menaces (CALJIC No. 4.40). We disagree. Madden points to the testimony of his declarations to the victim that "it was either him or me." That evidence must be read in context. Evidence of this defense was so minimal and insubstantial that it could not raise a reasonable doubt as to the existence of coercion or duress. Since there was insufficient evidence to raise a defense of threats or coercion there was no need to instruct on this defense. (*People* v. *Flannel, supra,* 25 Cal.3d 668, 684-685.)

Next, Madden contends that the trial court committed reversible error by failing to instruct *sua sponte* on the law of accomplices. Respondent concedes that the instruction should have been given but

argues that the error was harmless. We agree with respondent. There is abundant corroborative evidence in the record. No reasonable probability that a result more favorable to Madden would have been reached in the absence of the error exists (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see also *People* v. *Gordon* (1973) 10 Cal.3d 460, 472-473 [110 Cal.Rptr. 906, 516 P.2d 298]). The error does not require reversal. (Cal. Const., art. VI, § 13.)

■ Lastly, Madden contends the trial court committed reversible error by failing to instruct *sua sponte* that disorderly conduct is a lesser included offense to sodomy. Madden relies on *People* v. *Babb* (1951) 103 Cal.App.2d 326 [229 P.2d 843][7] for the proposition that Penal Code section 647, subdivision (a) is a lesser included offense of sodomy. Appendix C of CALJIC (4th ed. 1979) cites *Babb* for that proposition. The reliance is misplaced and the contention fails. Penal Code section 647, subdivision (a), has been amended and no longer describes the offense discussed in *Babb*.[8] Disorderly conduct, as currently defined in Penal Code section 647, subdivision (a), is not a necessarily included offense of forcible sodomy (Pen. Code, § 286). Penal Code section 647, subdivision (a) contains an element which is not necessary to the commission of sodomy, to wit, the act must be "in any public place or in any place open to the public or exposed to public view." A person may violate Penal Code section 286 without violating Penal Code section 647, subdivision (a). Therefore the latter is not a necessarily included offense of the former (*People* v. *Pendleton* (1979) 25 Cal.3d 371, 382 [158 Cal.Rptr. 343, 599 P.2d 649]; see also *People* v. *Tolliver* (1980) 108 Cal.App.3d 171, 173-174 [166 Cal.Rptr. 328] (holding Pen. Code, § 647, subd. (a) is *not* a necessarily included offense to indecent exposure)). There was no duty here to instruct *sua sponte* on disorderly conduct.

---

[7]*People* v. *Babb, supra*, 103 Cal.App.2d 326, was disapproved in *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 257 [158 Cal.Rptr. 330, 599 P.2d 636], insofar as *Babb* interpreted Penal Code section 647, subdivision (a) so broadly that the statute became unconstitutionally vague.

[8]Penal Code section 647, as discussed in *Babb*, provided: "Every idle, or lewd, or dissolute person, or associate of known thieves;...is punishable...." (103 Cal.App.2d at p. 328.)

Penal Code section 647 today provides in relevant part: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

"(a) Who solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view."

We conclude that the conviction of Madden on two counts of sodomy should be affirmed.

Each judgment of conviction of appellant Madden on two counts of forcible oral copulation and of appellant Vernacchio on one count of forcible oral copulation is reversed. The conviction of appellant Madden on two counts of sodomy is affirmed.

Zenovich, J., and Stone (W. A.), J.,* concurred.

The petition of appellant Madden for a hearing by the Supreme Court was denied April 29, 1981.

---

*Assigned by the Chairperson of the Judicial Council.